## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**STEPHON JARVIS HART,**

      **Petitioner,**

**v.**                              **Case No. 8:20-cv-1430-TPB-CPT**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Stephon Jarvis Hart, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, Respondent's response in opposition (Doc. 9), and Hart's reply (Doc. 12), the Court **DENIES** the petition.

## Procedural History

Hart was charged in Sarasota County with armed home invasion robbery, grand theft of a motor vehicle, aggravated assault on a law enforcement officer, and possession of a firearm by a convicted felon. (Doc. 9-2, Ex. 2, pp. 16-18.) He pled *nolo contendere* to all charges except aggravated assault, which the State later *nolle prossed*. (*Id.*, pp. 56, 117.) The state trial court sentenced Hart to concurrent terms of (1) life imprisonment with a ten-year mandatory minimum on the home invasion count, (2) five years'

1

imprisonment on the grand theft count, and (3) fifteen years' imprisonment with a three-year mandatory minimum on the felon-in-possession count. (*Id.*, pp. 98-105.) After sentencing, Hart moved to withdraw his plea, and the trial court denied the motion following an evidentiary hearing. (*Id.*, Ex. 12, pp. 193-220.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 8.)

Hart then filed a motion to reduce sentence under Florida Rule of Criminal Procedure 3.800(c). (*Id.*, Ex. 10.) The state court denied the motion—a ruling Hart did not appeal. (*Id.*, Ex. 11.) Next, Hart filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 12, pp. 29-43.) Following an evidentiary hearing, the state postconviction court denied relief on all claims, and the state appellate court affirmed. (*Id.*, pp. 370-89; *Id.*, Ex. 17.)

This federal habeas petition followed. (Doc. 1.) In his petition, Hart raises two grounds for relief: (1) trial counsel rendered ineffective assistance by advising him to enter an open plea, and (2) trial counsel was ineffective for failing to inform him that he would receive credit for time served if he accepted the State's forty-year plea offer. (*Id.*, pp. 5-8.)

## **Factual Background**[1]

On December 4, 2008, Hart participated in an armed robbery of a jewelry store in Fort Myers. After the robbery, Hart and the other suspects led police on a high-speed car chase. The suspects' vehicle came to a stop on Interstate 75 in North Port after police successfully deployed stop sticks.

Hart and Corey Lumpkin fled on foot; the other suspects remained in the car. After jumping a fence, Hart broke into a house by smashing a bedroom window with his handgun. The residents—Richard Corrado, his fiancée, and their daughter—were sleeping in the living room. Corrado heard the noise and got up. Hart approached Corrado, pointed the gun at his face, and demanded the keys to his car. Corrado handed the keys to Hart, who ran out the front door. Then Lumpkin came through the bedroom window, asked Corrado where Hart had gone, and followed Hart out.

Once outside the house, Hart and Lumpkin entered Corrado's car. Before they could drive off, law enforcement arrived. Lumpkin fled on foot, and Hart allegedly ran in front of the car and pointed his gun at an officer. In response, the officer shot Hart two times. Lumpkin was apprehended a few minutes later.

---

[1] This factual summary is based on the presentence investigation report, the plea colloquy, and the testimony and evidence presented at the Rule 3.850 evidentiary hearing.

As noted above, Hart was charged with, among other crimes, home invasion robbery with a firearm.[2] That offense carried a mandatory minimum of ten years' imprisonment and a maximum penalty of life in prison. Fla. Stat. §§ 812.135(2)(a), 775.087(2)(a)(1).

In December 2009, trial counsel sent Hart a letter "to follow up on [their] jail meeting." (Doc. 9-2, Ex. 12, pp. 391-92.) Counsel explained that the home invasion charge "carrie[d] a ten-year minimum mandatory sentence if [Hart was] found to have been in 'actual possession' of a firearm," and that "the judge could sentence [him] to life." (*Id.*, p. 391.) Counsel also noted that Hart had rejected the State's plea offer of forty years' imprisonment. Thus, according to counsel, Hart had two options: "open plea to the court, which would allow the judge to decide [the] sentence, or [] go to trial." (*Id.*) Counsel stated that he did not think Hart could "beat the home invasion or grand theft charges," but that he would begin preparing for trial while Hart "ponder[ed] his options." (*Id.*, pp. 391-92.) Finally, counsel elaborated on the "open plea" option:

> One possibility would be to enter an open plea to the court on [the charges for home invasion robbery, grand theft, and felon-in-possession], but demand a trial on the aggravated assault charge. I think that the judge would give you a more lenient sentence on the home invasion charge if you entered a plea of no contest as opposed to being found guilty after forcing a trial. Again, the judge could give you life, but I think a 20-40 year sentence is possible. I

---

[2] Hart was separately charged in Lee County for the armed robbery of the jewelry store.

> don't think the judge will punish you for requiring a trial on the
> aggravated assault charge because we have a good defense.

(*Id.*, p. 392.)

At the Rule 3.850 evidentiary hearing, counsel testified that the "dilemma" facing Hart was that the evidence against him was "overwhelming." (*Id.*, p. 287.) Counsel believed that "the most likely outcome" of a trial would be the judge "hammer[ing]" Hart by sentencing him to life in prison. (*Id.*, p. 290.) As a result, counsel explained, "neither one of us wanted to go to trial and neither one of us wanted to plea[d] to 40 years." (*Id.*, p. 287.) Additionally, counsel "begged and pleaded" with the prosecutor to accept a "20-year counteroffer," but "she said no." (*Id.*)

Counsel sent Hart another letter in March 2010. He said he "respect[ed] Hart's unwillingness to take an unreasonable plea offer such as the forty year offer that is currently on the table." (*Id.*, Ex. 2, p. 124.) Counsel explained, however, that Hart was "captured on video, there were a number of witnesses to the incident, and there [was] no doubt about [his] identity because [he was] taken into custody at the scene." (*Id.*) Counsel then advised Hart that "the absolute wisest course of action" would be to

> [o]pen plea to all the charges but the aggravated assault, which
> we'll fight at trial. In my experience, the judge will be far more
> lenient on you if you plea than if you force a trial and are convicted.
> In her mind, by entering a plea you are "taking responsibility for
> your actions" and saving the state significant time and expense,
> and for that reason deserve leniency. Furthermore, if you open

> plea, you'll only be scored about ten years in prison. While the
> judge may go higher than that, I would be shocked if she tripled
> that or quadrupled that as she would almost surely do after a
> conviction at trial.

(*Id.*, p. 125.)

At the Rule 3.850 evidentiary hearing, counsel pointed to several

"mitigating factors" that led him to believe the judge "wouldn't give [Hart]

the maximum sentence" if he entered an open plea. (*Id.*, Ex. 12, pp. 290-91.)

The mitigating factors included (1) the victims' testimony that Hart appeared

to be "apologetic" and "scared" during the incident, (2) Hart's "relatively

modest criminal background," which included no prior convictions for violent

offenses, and (3) Hart's willingness to "take responsibility for the crime." (*Id.*)

In short, counsel believed that "on a spectrum of home invasion robberies,"

Hart's case "was less egregious than many [he'd] seen." (*Id.*, p. 290.)

Hart ultimately chose to enter an open plea to all charges except

aggravated assault on a law enforcement officer. He signed an

"Acknowledgment and Waiver of Rights" form indicating that (1) he faced a

"maximum penalty" of "life" and a "minimum mandatory penalty" of ten

years in prison, (2) there was "no agreement with [the] State" on sentencing,

and (3) nobody had "made any promises or guarantees" to him in connection

with the plea. (*Id.*, Ex. 2, p. 62.)

6

The trial court discussed these matters with Hart during the plea colloquy:

> THE COURT: The maximum penalty if I were to sentence you to the maximum penalty –
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: – would be life. There's a minimum, mandatory for the firearm which is ten years. And I don't have any way around that right now –
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: – that I can see. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So as far as I understand my hands might be tied on that issue.
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .
>
> THE COURT: Do you understand that I may do something that makes all the parties unhappy[?]
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I may do something totally out of whatever either side asks for so sentencing at this point is totally unknown. And I don't know anything about you, so you're completely a blank slate to me.
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .

THE COURT: Has anybody put any pressure on you to enter this plea?

THE DEFENDANT: No, ma'am.

THE COURT: Has anybody threatened you[?]

THE DEFENDANT: No, ma'am.

THE COURT: Has anybody made any promises to you whatsoever in order to get you to enter this plea[?]

THE DEFENDANT: No, ma'am.

THE COURT: All right. I find that there is a factual basis for the plea, that it's freely and voluntarily made.

(*Id.*, Ex. 12, pp. 110-18.)

At sentencing, the prosecutor indicated that she was "seeking life." (*Id.*, Ex. 2, p. 228.) Hart's counsel sought a sentence of ten years in prison. He pointed to multiple "mitigators," including that (1) the home invasion was "an unsophisticated, spontaneous crime," (2) Hart's encounter with Corrado, the victim, lasted "approximately ten seconds," (3) Hart had "[n]o convictions for any violent crimes on his record," and (4) Hart had "admitted responsibility" for his crimes and "expressed remorse." (*Id.*, pp. 237-39.) Counsel also pointed out that the Department of Corrections had recommended "ten years of prison followed by five years of probation." (*Id.*, p. 238.)

As noted above, the trial court ultimately sentenced Hart to concurrent terms of life imprisonment on the home invasion count, five years'

imprisonment on the grand theft count, and fifteen years' imprisonment on the felon-in-possession count. During the Rule 3.850 evidentiary hearing, counsel testified that he was "shocked by the sentence" and still felt the same way eight years later. (*Id.*, Ex. 12, p. 299.)

## Standards of Review

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*

*v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-

court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Hart alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Hart must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Hart must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion

**Ground One**

Hart contends that trial counsel provided ineffective assistance by advising him to enter an open plea. According to Hart, counsel recommended an open plea because he believed "the [j]udge would impose a more lenient sentence for taking responsibility for [the crimes] and saving the State significant time and expense." (Doc. 1, p. 5.) Hart argues that this advice was

"unreasonable" and reflected counsel's lack of experience in criminal law. (Doc. 2 at 10.) In Hart's view, counsel should have "urg[ed] him in the most strenuous terms possible to accept" the State's forty-year plea offer. (*Id.*, p. 12.) Had counsel done so, Hart claims he would have accepted the offer and received a forty-year sentence rather than life.

The state court rejected this claim in a lengthy written order. The court first summarized the testimony given by trial counsel and Hart at the evidentiary hearing. It then set out the law governing ineffective assistance claims in the guilty plea context. The court ultimately concluded that Hart failed to establish that counsel's performance was deficient:

> In the present case, both Defendant and Counsel testified that Counsel neither pressured Defendant into entering his open plea, nor promised a specific sentence. Counsel advised Defendant that he could be sentenced to a maximum of life in prison and a minimum of 10 years, and Defendant acknowledged understanding this at the time he entered his plea.
>
> Evidence of this is found in the letters written by Counsel to Defendant on December 8, 2009, and March 12, 2010, in which Counsel both memorialized Defendant's options of accepting the State's 40-year plea offer, entering an open plea, or proceeding to trial, and confirmed that Defendant had already decided to reject the plea offer. Counsel's language urging consideration of entering an open plea bespeaks of advice, and not promises. For example, Counsel wrote, "I think that the judge would give you a more lenient sentence on the home invasion charge"; "I think a 20-40 year sentence is possible"; and "[i]n my experience, the judge will be far more lenient on you if you plea." He also reminded Defendant that the judge could go higher than the 10 years he scored as a minimum; and that "the judge could give you life." Counsel testified that he gave similar advice on the occasions when

he met with Defendant in person, and that his advice to enter the open plea was given after deposing several witnesses.

. . .

For these reasons, the Court finds that Counsel did not promise Defendant a more lenient sentence if he entered an open plea.

The Court also concludes that Counsel did not render deficient performance when he advised Defendant to enter an open plea. Counsel conducted several depositions of witnesses, in addition to reviewing the State's evidence, and he came to the conclusion that a trial was "a bad idea." On this point, Counsel wrote in his December 8, 2009, letter to Defendant, "I do not think that we can beat the home invasion or grand theft charges." And in his March 12, 2010 letter, he wrote, "I don't think we can convince anybody that you did not possess a firearm during the incident. Richard Corrado, Misty Whitman [Corrado's fiancée], and Dep. Bray will all testify that they saw you in possession of the firearm. The video appears to show you using a firearm to smash the vehicle's window, and the gun was found a few feet away from where you fell after being shot." Counsel's recommendation that Defendant enter an open plea was based on his concern that the trial court would "hammer" him after a conviction at trial and impose a life sentence, and Defendant's continued refusal to accept the State's 40-year plea offer.

It appears from the entire record that Counsel's advice was strategic, based on his investigation of Defendant's case and experience from handling prior felony cases.

. . .

Defendant is understandably disappointed in his sentence. But defendants who plead guilty and are given a stiffer sentence than they anticipated cannot expect to receive another try at a lighter sentence by arguing that they were under the impression that they would receive a lesser sentence; a reasonable basis for such an impression must be shown. The Court finds no such basis in this case.

(Doc. 9-2, Ex. 12, pp. 383-88 (citations omitted).)

The state court reasonably rejected Hart's ineffective assistance claim. "During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Review of counsel's actions is "highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Moreover, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). Instead, "to show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Id.* (emphasis omitted).

The state court reasonably concluded that counsel did not render deficient performance by advising Hart to enter an open plea. Hart was charged with, among other crimes, home invasion robbery with a firearm, an offense carrying a mandatory minimum of ten years' imprisonment and a maximum penalty of life in prison. Because the evidence against Hart was overwhelming, counsel believed that "the most likely outcome" of a trial

15

would be the judge "hammer[ing]" Hart by sentencing him to life in prison. (Doc. 9-2, Ex. 12, p. 290.) Furthermore, the only plea offer Hart received was for forty years' imprisonment. Hart repeatedly rejected that offer, making clear to counsel that he had "no interest in taking [forty] years." (*Id.*, p. 331.) In addition, counsel was unable to persuade the State to accept a twenty-year counteroffer. Thus, as counsel explained at the evidentiary hearing, Hart was "stuck between a big rock and a very hard place." (*Id.*, p. 298.)

Faced with this "dilemma," counsel advised Hart to enter an open plea. (*Id.*, p. 287.) Counsel wrote to Hart that, based on his "experience," the judge would "be far more lenient on [him] if [he] ple[d] than if [he] force[d] a trial and [was] convicted." (*Id.*, Ex. 2, p. 125.) That prediction rested on several "mitigating factors" which, in counsel's view, weighed against a life sentence in the event of an open plea: (1) the victims' testimony that Hart appeared to be "apologetic" and "scared" during the incident, (2) Hart's "relatively modest criminal background," which did not include any prior convictions for violent offenses, and (3) Hart's willingness to "take responsibility for the crime." (*Id.*, Ex. 12, pp. 290-91.) Hart cannot show that "no competent counsel would have" advised him to enter an open plea in these circumstances. *Grayson*, 257 F.3d at 1216. Accordingly, the state court reasonably concluded that Hart failed to meet *Strickland*'s deficient performance prong.

To be sure, counsel's prediction of leniency turned out to be incorrect, and Hart received a life sentence despite entering an open plea. The law is clear, however, that "an inaccurate prediction about the sentence that a defendant will receive does not constitute ineffective assistance of counsel." *Butler v. Sec'y, Dep't of Corr.*, No. 8:12-cv-56-JDW-TGW, 2015 WL 859487, at *8 (M.D. Fla. Feb. 27, 2015) (collecting cases); *see also Dinaso v. Sec'y of Dep't of Corr.*, No. 8:11-cv-415-JDW-EAJ, 2014 WL 1248074, at *8 (M.D. Fla. Mar. 26, 2014) ("[E]ven if counsel promised Petitioner a particular sentence or misadvised Petitioner about his sentence, Petitioner cannot establish his ineffective assistance of counsel claim" because "an inaccurate prediction about sentencing alone will not generally be sufficient to sustain a claim of ineffective assistance of counsel."); *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) ("[A]n attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.").

Furthermore, the state court reasonably concluded that counsel did not promise Hart a more lenient sentence if he entered an open plea. In the March 2009 letter, counsel made clear that "the judge could give [Hart] life" if he entered an open plea. (Doc. 9-2, Ex. 12, p. 392.) Counsel likewise explained in the March 2010 letter that "the judge may go higher" than the ten-year mandatory minimum if Hart entered an open plea. (*Id.*, Ex. 2, p. 125.)

17

Moreover, Hart himself testified at the evidentiary hearing that he was not "claiming [counsel] promised" him anything to induce him to plead guilty. (*Id.*, Ex. 12, p. 351.) Faced with this evidence, the state court reasonably rejected Hart's claim that counsel was ineffective for promising a more lenient sentence if he entered an open plea.

Even if counsel's statements to Hart could be construed as promising a more lenient sentence, the ineffective assistance claim would fail for lack of prejudice. When counsel mistakenly promises a certain sentencing outcome, a petitioner cannot show prejudice if he was advised during the plea colloquy of "the consequences of the plea agreement, range of punishment, and sentencing contingencies." *United States v. Wilson*, 245 F. App'x 10, 12 (11th Cir. 2007); *see also United States v. Carson*, 32 F.4th 615, 622 (6th Cir. 2022) ("When an attorney erroneously promises a certain sentencing outcome, a defendant cannot show prejudice if he was accurately advised during the plea colloquy."). As noted above, the trial court informed Hart during the plea colloquy that (1) he faced a "maximum penalty" of "life" and a mandatory minimum of ten years, (2) the court "may do something that makes all the parties unhappy," and (3) Hart's sentence was "at this point [] totally unknown" because the court "may do something totally out of whatever either side asks for." (Doc. 9-2, Ex. 12, pp. 110-18.) Accordingly, "[t]o the extent [counsel] may have expressly or implicitly promised a guaranteed sentence or

the extent [Hart] perceived his advice about the expected sentence's length as such, the change of plea colloquy cured any such false impression." *Inchierchiere v. Fla. Dep't of Corr.*, No. 17-14260-CIV, 2019 WL 11718812, at *15 (S.D. Fla. Apr. 2, 2019), *adopted by* 2019 WL 11718809 (S.D. Fla. May 31, 2019).

In short, Hart fails to establish that the state court's rejection of his ineffective assistance claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Thus, he is not entitled to relief on Ground One.[3]

**Ground Two**

Hart contends that trial counsel was ineffective for failing to inform him that, if he accepted the State's forty-year plea offer, he would receive "589 days [of] credit" for the time he spent in jail before sentencing. (Doc. 1, p. 7.) Counsel and Hart offered conflicting testimony on this point during the Rule 3.850 evidentiary hearing. Counsel stated that, although he had "no specific recollection of discussing jail credit with [Hart]," "[i]t would have been [his] practice to tell [Hart] he gets credit for the time that he's served in

---

[3] In its order denying the Rule 3.850 motion, the state court separately addressed trial counsel's erroneous belief that armed home invasion robbery qualified as a category nine offense rather than a category ten offense. Hart does not raise this issue in his petition. In any event, the state court reasonably concluded that Hart was not prejudiced by the error, because the correction of his scoresheet merely increased "[t]he lowest permissible prison sentence . . . from 91.65 months to 94.6 months," and Hart "always scored a minimum mandatory of 10 years because [] he possessed a firearm." (Doc. 9-2, Ex. 12, p. 387.)

jail." (Doc. 9-2, Ex. 12, p. 305.) Hart, by contrast, testified that the two never discussed jail credit. (*Id.*, pp. 341-42.) On cross-examination, however, Hart admitted that he had previously served a two-year sentence for unrelated crimes, and that he had received credit for the "months [he] spent at the jail" before sentencing in that case. (*Id.*, pp. 347-48.)

The state court rejected Hart's ineffective assistance claim as follows:

> [T]he Court accredits Counsel's testimony that it was his practice to discuss jail credit with his clients. The Court did not find credible Defendant's testimony that he had no knowledge of jail credit, in consideration of his prior prison experience. Defendant acknowledged that he did not serve 2 years in prison, so that the prior time he spent in a Monroe County jail was taken into consideration when calculating his time to be served. When viewed in conjunction with Counsel's testimony that he had to "twist [Defendant's] arm" to get him to make a 20-year counter-offer, and that Defendant never considered accepting the 40-year offer, the Court does not find a reasonable probability that Defendant would have accepted the 40 year offer, if only he knew he would have been credited with 589 days.

(*Id.*, pp. 387-88.)

The state court reasonably rejected this claim. In denying relief, the court credited trial counsel's testimony "that it was his practice to discuss jail credit with his clients." (*Id.*, p. 387.) By contrast, the court discounted Hart's testimony that "he had no knowledge of jail credit." (*Id.*) "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Hart has not shown by "clear and

convincing evidence" that the court's credibility determinations were erroneous. 28 U.S.C. § 2254(e)(1).

Nor has Hart shown that the court unreasonably applied *Strickland* in rejecting his claim. "In reviewing claims of ineffective assistance of counsel where a trial counsel does not have specific memories otherwise, courts may rely on an attorney's representation that his or her conduct at the time was in conformance with his or her general practice or habit." *Strickland v. Sec'y, Fla. Dep't of Corr.*, No. 3:15-cv-1251-TJC-JBT, 2018 WL 4407108, at *9 (M.D. Fla. Sept. 17, 2018) (citing *Dasher v. Att'y Gen., Fla.*, 574 F.3d 1310, 1314 (11th Cir. 2009)). Here, although trial counsel could not specifically recall discussing jail credit with Hart, he testified that "[i]t would have been [his] practice to tell [Hart] he gets credit for the time that he's served in jail." (Doc. 9-2, Ex. 12, p. 305.) Based on this testimony (and Hart's concession that he had previously received jail credit in an unrelated case), the state court reasonably concluded that Hart knew he would receive credit for time served if he accepted the forty-year plea offer. That factual finding eliminated any basis for concluding that Hart suffered prejudice from counsel's actions.

In sum, Hart fails to establish that the state court's rejection of his ineffective assistance claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Thus, he is not entitled to relief on Ground Two.

## **Conclusion**

Although this Court has written a lengthy Order, it should be recognized that Hart's request for habeas relief is frivolous. Hart is unquestionably guilty of committing various serious and very dangerous crimes, including an armed home invasion where he broke into an innocent family's home during the night by smashing their window with a gun while he was fleeing from the police trying to arrest him for an armed robbery of a jewelry store. He definitely knew he faced the possibility of a life sentence for this egregious criminal behavior; his lawyer told him that and the trial judge told him that. The prosecutor offered Hart an opportunity to avoid the possibility of a life sentence by agreeing to serve forty years in prison. At that point Hart completely controlled his own fate and could have avoided the possibility of a life sentence by taking the forty-year offer. But that offer wasn't good enough for him—he wanted less time.

After his lawyer provided him with a full, complete, and accurate explanation of his rights and options, Hart made the knowing, intelligent, and voluntary decision to take his chances with an open plea to the trial judge. He hoped the judge would give him something less than the forty years the prosecutor offered, but he definitely knew the judge could give him more time—up to a life sentence.

Hart's decision ended up being a bad one for him because the judge sentenced him to life. Now, in a transparent attempt to avoid the consequences of his own bad decision, Hart seeks to blame his lawyer and asserts that federal habeas relief is due because the entire Florida state court system got his case wrong. Neither Hart's lawyer nor the Florida state court system did anything wrong. Hart did wrong by committing a series of very serious and dangerous crimes, and he followed those mistakes by making a bad decision in not accepting a plea offer that would have avoided a life sentence. Justice requires that Hart suffer the consequences of his own actions and decisions.[4]

Accordingly, it is **ORDERED** that Hart's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Hart and to **CLOSE** this case.

It is further **ORDERED** that Hart is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C.

---

[4] Hart seeks an evidentiary hearing on his claims. The Court concludes that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

§ 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Hart must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hart has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Hart must obtain permission from the circuit court to appeal *in forma pauperis*.

 **DONE and ORDERED** in Tampa, Florida, this 4th day of May, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**